# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED

FEB 1 4 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
)
Apple iPhone )    **19MJ0678**
S/N BCG-E2946A )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachement A, incorporated herein by reference

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841(a)(1);846 | Possession of Methamphetamine with Intent to Distribute;Conspiracy to do same |
| Title 18 U.S.C. 922(g)(1) | Felon in Possession of Ammunition |

The application is based on these facts:
See attached affadavit of Special Agent Sean Becker

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Becker, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/14/19

_____
*Judge's signature*

City and state: San Diego, California     Hon. Mitchell D. Dembin United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Sean Becker, being duly sworn, depose and state:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a firearms possession and narcotics distribution investigation conducted by The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents for the following cellular phone:

> Apple iPhone
> S/N BCG-E2946A
> (**Target Device**)

2. Officers seized the **Target Device** on January 9, 2019 from Jose Estrada (ESTRADA) after he was arrested in San Diego, California and found to possess approximately 25.05 grams of methamphetamine, 14 rounds of .40 caliber ammunition loaded in a .40 caliber pistol manufactured from an unfinished lower receiver bearing no manufacture markings or serial numbers, approximately $424 in different denominations in United States Currency, and a digital scale with white residue. The **Target Device** is currently being held as evidence at the San Diego Police Department at 1401 Broadway, San Diego, California, 92101, in the Southern District of California.

3. Probable cause exists to believe that **Target Device** contains evidence relating to violations of Title 18, United States Code, Sections 922(g)(1) and 922(a)(1)(A) and Title 21 United States Code, Sections 841 and 846.

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in the items to be searched as described in Attachment A. These items may be or lead to evidence of the violations described above.

1

## TRAINING AND EXPERIENCE

5. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since July 2014. Before joining ATF, I was employed as a Police Officer and Narcotics Detective for the St. Louis County Police Department for approximately seven and a half years. I am currently assigned to the ATF San Diego Field Office. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator's Training Program, the St. Louis County and Municipal Police Academy, and the ATF National Academy's Special Agent Basic Training Program. I am also a graduate of the Drug Enforcement Administration Taskforce Agent Basic training course. As an ATF Special Agent, I have received formal and informal training in federal firearms and drug laws. I have written affidavits for search warrants and complaints that have yielded evidence of state and federal criminal violations. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States.

7. During my law enforcement career, I have received formal training in federal firearms laws, narcotics, and gang investigations, to include investigations on persons prohibited from possessing firearms. I have been trained in various investigative techniques, including physical and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen register/trap and trace devices, telephone toll analysis, undercover operations, physical searches, mail covers, and electronic examinations of evidence. In addition to my formal training, I have received on the job training in the manner in which narcotics are packaged, consumed, transported and sold. I have spoken to narcotics officers, drug users, drug dealers, and informants regarding the manner in which narcotics transactions are commonly carried out, how narcotics are packaged for sale, and how drug dealers store, conceal, sell, smuggle, and transport narcotics.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics traffickers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics trafficking generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

9. I also know that narcotics traffickers sometimes maintain lists of clients that have drug debts, often referred to as "pay and owe" sheets. These debt lists are sometimes maintained on electronic files and stored on electronic storage devices.

10. In preparing this affidavit, I have conferred with other law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in the distribution of firearms and controlled substances, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Firearm and narcotics dealers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Firearm and narcotics dealers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the

3

        originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c.    Firearm and narcotics dealers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d.    Firearm and narcotics dealers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e.    Firearm and narcotics dealers will use cellular telephones to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f.    Firearm and narcotics dealers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked police units.

12. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a firearm and narcotics trafficker's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

13. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in firearms and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

a. tending to indicate efforts to illegally acquire, possess, and / or deal firearms and/ or narcotics;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

c. tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

d. tending to identify travel to or presence at locations involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

14. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other investigators and agents

experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate and all dates refer to the current calendar year and all times refer to Pacific Standard Time (PST) unless specified otherwise. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

## FACTS SUPPORTING PROBABLE CAUSE

15. On January 9, 2019 San Diego Police Department officers observed an individual, later identified as ESTRADA, driving a white Acura TL without a front license plate, in violation of the California Vehicle Code. As the officer followed the Acura, he noticed that the Acura had a modified exhaust, which created a noise loud enough to vibrate the officer's vehicle, another violation of the California Vehicle Code. A traffic stop was conducted, and the officer contacted ESTADA, the sole occupant of the vehicle.

16. After speaking with ESTRADA, the officer conducted a records check on him revealing that he had a suspended driver's license and various convictions for drug, weapons, and evading police. The officer removed ESTRADA from the vehicle and prepared the vehicle to be towed by conducting a vehicle inventory search pursuant to the California Vehicle Code.

17. During the inventory search, the officer discovered a functional scale and twenty-nine small empty plastic bags in the center console. Two cell phones were also recovered, one from the center cup holder and one from the rear pocket of the passenger seat. Using the key fob attached to the car keys, the officer opened the trunk revealing a .40 caliber pistol manufactured from an unfinished lower receiver bearing no manufacture markings or serial numbers containing a chambered round of .40 caliber and an additional

6

13 rounds of .40 caliber ammunition in the loaded magazine. Records revealed that the gun was not registered to ESTRADA. Underneath the firearm was a clear plastic bag with what was later tested and determined to be 25.05 grams of methamphetamine. A glass pipe with a bulbous end and burnt residue was located near the bag of methamphetamine.

18. ESTRADA's wallet was also inventoried revealing $389 in various denominations. A search of ESTRADA's person revealed $135 in various denominations. A check of the US Currency located on ESTRADA's person later revealed that five of the $20 bills were counterfeit.

19. During ESTRADA's transportation to Central Jail, he began to spontaneously comment about his arrest to officers. ESTRADA claimed that two of the charges he was arrested for would "stick", specifically, the gun charge and drug sales charge. ESTRADA then brazenly began to brag that the gun found in his vehicle, was a cop's gun. He explained that he likes to take cop's guns and the last one he possessed actually said National City Police Department.

20. **Target Telephone** was searched pursuant to search warrant #59401 signed by San Diego Superior Judge Jay M. Bloom. I am not relying upon, and ask the Court not to consider, anything the officers may or may not have found in this search of the **Target Telephone**.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in illegal acquisition and possession of firearms and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illegal firearms possession and narcotics trafficking activities of ESTRADA and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook,

pictures and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the

8

telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

25. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

26. The United States has not attempted to obtain this information by other means.

## CONCLUSION

27. Based on all of the facts and circumstances described above, there is probable cause to conclude that RAMRIEZ used the **Target Device** to facilitate the offenses of distributing methamphetamine. **Target Device** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations 18 U.S.C. § 922(g)(1) and 922(a)(1)(A), Felon in Possession of Ammunition/Firearms; 21 U.S.C. § 841, Distribution of a Controlled Substance; and 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substances.

9

28. Because the **Target Device** was seized unexpectedly from ESTRADA during a traffic stop and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by ESTRADA continues to exist on the **Target Device**.

29. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with The Bureau of Alcohol, Tobacco, Firearms and Explosives, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

Sean Becker, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me this 14 day of February, 2019.

The Honorable Mitchell D. Dembin
United States Magistrate Judge

10

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple iPhone
    S/N BCG-E2946A

    **(Target Device)**

Target Device is currently in the possession of the San Diego Police Department at 1401 Broadway, San Diego, California, 92101, in the Southern District of California.

# ATTACHMENT B

## DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

The following evidence to be searched for and seized pertains to violations of Title 18, United States Code Sections 922(g)(1) and 922(a)(1)(A) and Title 21, United States Code Sections 841 and 846:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to illegally acquire, possess, and / or deal firearms and/ or narcotics;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   c. tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   d. tending to identify travel to or presence at locations involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.